IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LOU MONTGOMERY and<br>MELISSA MONTGOMERY H/W, | *<br>* | |
| Plaintiffs, | *<br>* | |
| v. | *<br>* | Civil Case No. SAG-14-1520 |
| CSX TRANSPORTATION, INC. | *<br>* | |
| and | *<br>* | |
| JAMCO PRODUCTS, INC., | *<br>* | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

Plaintiff Lou Montgomery initiated this lawsuit against Defendant CSX Transportation, Inc. ("CSX") under the Federal Employers' Liability Act ("FELA") for injuries he sustained as a result of a workplace injury at the CSX Cumberland Yard. [ECF No. 1]. Thereafter, Mr. Montgomery and his wife, Melissa Montgomery ("Plaintiffs"), added Defendant Jamco Products, Inc. ("Jamco") to the action, alleging negligence, breach of warranties, strict products liability, and loss of consortium for injuries arising out of the same incident. [ECF No. 16]. Jamco has moved to dismiss Plaintiffs' third amended complaint as to Jamco (Counts II and III) for failure to state a claim upon which relief can be granted. [ECF No. 38]. Plaintiffs' opposition followed, [ECF No. 44], and Jamco did not file a reply. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons set forth below, Jamco's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND

Taken in the light most favorable to Plaintiffs, the facts of this case are as follows. On or about October 5, 2013, Plaintiff Lou Montgomery was employed by CSX Transportation and was working at the CSX Cumberland Yard in or near Cumberland, Maryland. Third Amended Complaint ¶ 37. At about 1:40 p.m., Mr. Montgomery went to place the toolbox he was holding onto a tool cart, which was designed and manufactured by Jamco. *Id.* ¶¶ 41, 47–48. As Mr. Montgomery placed the tool box on the tool cart, the cart collapsed to the ground, causing the tool box to fall, which caused Mr. Montgomery's body to lurch downward in order to continue to hold the tool box. *Id.* ¶¶ 41–42. As a result of his body moving in this manner, Mr. Montgomery experienced immediate pain, and sustained injuries to his back and lower extremities. *Id.* ¶¶ 43, 60.

On May 8, 2014, Mr. Montgomery commenced this lawsuit against CSX for relief under FELA. [ECF No. 1]. On June 12, 2014, Mr. Montgomery amended the complaint to add state law claims on behalf of himself and his wife against Jamco.[1] [ECF No. 16]. CSX filed a motion to dismiss on June 26, 2014. [ECF No. 20]. On July 1, 2014, Plaintiffs filed a second amended complaint. [ECF No. 22]. Jamco filed its first motion to dismiss on August 26, 2014. [ECF No. 30]. On September 2, 2014, Plaintiffs filed a third amended complaint, and thereafter, on September 18, 2014, Plaintiffs filed a consent motion for leave to file a third amended complaint. [ECF Nos. 31, 32]. On November 17, 2014, Judge Bennett granted Plaintiffs' consent motion, and dismissed CSX and Jamco's earlier motions to dismiss as moot. [ECF No. 33]. This case was referred to this Court for all proceedings on November 18, 2014.[2] [ECF No. 34]. On

---

[1] Pursuant to 28 U.S.C. § 1332, federal jurisdiction is founded upon diversity of citizenship and the amount of controversy exceeding $75,000.

[2] All parties have consented to proceed before a U.S. Magistrate Judge. [ECF Nos. 36, 37, 41].

November 20, 2014, Jamco filed the instant motion to dismiss, which is now ripe for adjudication.

## II.     STANDARD OF REVIEW

Jamco argues that Counts II and III of Plaintiffs' third amended complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion "test[s] the sufficiency of a complaint" and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not sufficient that the facts suggest "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that the court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citations and internal quotation marks omitted). A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted).

**III.    ANALYSIS**

Jamco contends that Plaintiffs' third amended complaint (hereinafter "Complaint") lacks factual specificity, fails to give Jamco fair notice of the nature of the claims against it, and makes it impossible for Jamco to properly answer. Jamco Mot. 2–3. To the extent that Jamco claims it cannot comprehend exactly which claims Plaintiffs assert against it, the Court finds that, while disorganized, Plaintiffs' Complaint sufficiently conveys which claims are asserted against Jamco. In Count II, Plaintiff Lou Montgomery appears to have asserted the following products liability claims against Jamco: (1) negligence; (2) breach of the implied warranties of (i) merchantability, and (ii) fitness for a particular purpose;[3] and (3) strict liability. In Count III, Plaintiff Melissa Montgomery asserts a loss of consortium claim against Jamco. However, the Complaint should have been organized differently. In particular, each count should allege an individual cause of action, not several causes of action for each plaintiff against each defendant. While not in violation of any federal or local rule by organizing the Complaint in this way, Plaintiffs' counsel is directed to re-format the Complaint—specifically, the numerous claims alleged in Count II—in the more standard format, for purposes of clarity and efficiency.

To recover on a products liability claim in Maryland—whether under a theory of negligence, breach of warranty, or strict liability—a plaintiff must prove: (1) the existence of a defect; (2) the attribution of the defect to the seller; and (3) a causal relationship between the defect and the injury.[4] *Ford Motor Co. v. General Acc. Ins. Co.*, 365 Md. 321, 334–35, 779 A.2d 362, 370 (2001). "A product defect can arise from the design of the product, a deficiency in its manufacture, or from the absence or inadequacy of instructions or warnings as to its safe

---

[3] Plaintiffs concede that their Complaint does not sufficiently plead breach of express warranty, and they therefore withdraw this claim. Pl. Opp. 7.

[4] In an action based upon diversity of citizenship, the relevant state law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

4

and appropriate use." *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 407 (D. Md. 2001) (citations omitted). Under each theory, the plaintiff must prove that the product was defective at the time it left the manufacturer. *Ford Motor Co.*, 365 Md. at 334, 779 A.2d at 369.

### 1. Negligence

Plaintiffs allege that Jamco "negligently designed, manufactured, sold, distributed, delivered, and/or assembled the subject cart." Compl. ¶ 53. A cause of action for negligence must include sufficient facts to allege: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Lloyd v. General Motors Corp.*, 397 Md. 108, 131–32, 916 A.2d 257, 270–71 (2007) (citations and internal quotation marks omitted). A negligence theory of products liability "focuses upon the reasonableness of the manufacturer's acts and omissions, including the reasonableness of any warning, rather than upon the existence of a defect in the product itself." *Shreve*, 166 F. Supp. 2d at 407 (citations omitted).

Jamco argues that Plaintiffs have failed to set out specific facts that establish whether Jamco owed Plaintiffs a duty, and how Jamco allegedly breached that duty. Jamco Mot. 4. This Court disagrees. Plaintiffs allege that Jamco had a duty to design, manufacture, and distribute its tool carts in a safe condition. Compl. ¶ 54. It is well-settled law that a manufacturer owes a duty of reasonable care to all those who can reasonably be expected to make use of its product. Plaintiffs allege that Jamco breached this duty when it failed to reasonably use a proper metal to create a secure weld, failed to use reasonable and adequate welding techniques, and failed to reasonably and properly inspect the cart to discover substandard welds, among other things. *Id.* According to Plaintiffs, the cart collapsed "without any warning to the plaintiff, and as a result of

improper welds and/or metal fatigue," caused Mr. Montgomery's body to lurch downward to continue to hold the tool box that he had just placed on the tool cart, and resulted in injuries. *Id.* ¶¶ 41–42. Plaintiffs also contend that the subject cart was in substantially the same conditions as when it left the Jamco facility. *Id.* ¶ 39. These facts, taken as true, sufficiently state a cause of action for Jamco's negligence for allegedly negligent design and negligent manufacturing of the product.

Plaintiffs seem to also put forth a negligent failure to warn claim. *See* Compl. ¶ 54 ("[Jamco] failed to provide reasonably necessary warning and instructions that the cart contained improper and/or inadequate welds and other structural defects that rendered the cart unsafe for its normal use."). "Product liability law imposes on a manufacturer a duty to warn if the item produced has an inherent and hidden danger that the producer knows or should know could be a substantial factor in causing an injury." *Virgil v. "Kash N' Karry" Service Corp.*, 61 Md. App. 23, 33, 484 A.2d 652, 657 (1984); *see also Mazda Motor of Am., Inc. v. Rogowski*, 105 Md. App. 318, 324–25, 659 A.2d 391, 394 (1995) ("An obligation to warn may arise when there is no defect in design or manufacture, but the distributor knows or should have known of product-related risks that would not be obvious to normal, reasonable users."). Here, Plaintiffs do not assert that Jamco owed Mr. Montgomery a duty to warn of any "inherent and hidden dangers" in the subject tool cart, nor could they convincingly do so. *See Higgens v. Diversey Corp.*, 998 F. Supp. 598, 604–05 (D. Md. 1997) ("A manufacturer cannot be held liable for failure to warn unless it has knowledge, or by application of reasonable, developed human skill and foresight should have knowledge, of the presence of . . . danger.") (citations and internal quotation marks omitted). By Plaintiffs' own theory, the flaw stemmed from a "defect in design or manufacture,"

6

not an inherent and hidden danger.  Thus, Plaintiffs' negligent failure to warn claim fails on its face.

Finally, Jamco contends that Plaintiffs' allegations against CSX in Count I contradict Plaintiffs' allegations against Jamco in Counts II and III, and thus should be dismissed.  Jamco Mot. 4.  Specifically, Jamco argues that in Count II, ¶ 41, Plaintiffs allege that the tool cart collapsed "as a result of improper welds and/or metal fatigue," yet in Count I, ¶¶ 14–15, Plaintiffs allege that CSX is at fault because it made an improper choice of product when it purchased the tool cart.  *Id.*  Under Federal Rules of Civil Procedure 8(d)(2) and 8(d)(3), Plaintiffs are permitted to set forth alternative or conflicting claims in their complaint.  Jamco's argument therefore fails.

In sum, while Jamco contends that Plaintiffs have used a "shotgun" approach to pleading, Plaintiffs' Complaint does not necessarily render their negligence claim insufficiently particular.  Rather, the Complaint places Jamco on notice of the crux of Plaintiffs' claim: that Mr. Montgomery was injured due to Jamco's breach of its duty as the manufacturer of the tool cart to exercise reasonable care in its design and manufacture.  The Complaint identifies the source of the defect—improper welds—and describes specific flaws to which it attributes this defect.  Thus, Plaintiffs' Complaint pleads negligence with sufficient particularity such that Jamco is able to mount a defense.

### 2. Breach of Implied Warranties

#### i. Breach of Implied Warranty of Merchantability

Plaintiffs allege that Jamco breached its implied warranty of merchantability because "the substandard condition of the welds, manufacture and assembly rendered the cart unmerchantable."  Compl. ¶¶ 55–56.  To assert a claim for breach of implied warranty of

merchantability, "a plaintiff must establish that a product is not of merchantable quality and that he suffered an injury as a result. A product is not of merchantable quality when it is not fit for the ordinary purposes for which it is used." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 444 (4th Cir. 2005); *see* Md. Code Ann., Com. Law § 2-314 (2014). "To recover on a claim for breach of implied warranty of merchantability, as with a strict liability or negligence claim, a plaintiff must prove the existence of a defect at the time the product leaves the manufacturer." *Grinage v. Mylan Pharm., Inc.*, 840 F. Supp. 2d 862, 871 (D. Md. 2011) (citing *Ford Motor Co.*, 365 Md. at 334, 779 A.2d at 369).

Jamco argues that Plaintiffs' Complaint fails to set forth specific facts as to a defect and as to whether the claimed defect was of design or manufacture. Jamco Mot. 6. Although disorganized, Plaintiffs' Complaint puts forth both design defect and manufacturing defect allegations, *see* Compl. ¶¶ 54, 57–58, as well as an assertion that such defects existed at the time the product left the Jamco facility. *Id.* ¶¶ 39, 58. Specifically, Plaintiffs argue that the substandard condition of the welds—the design defect—and substandard manufacture and assembly of the cart—the manufacturing defect—rendered the cart unmerchantable, such that the tool cart collapsed when a tool box was placed on it, causing injury to Mr. Montgomery. The disorganization of Plaintiffs' Complaint, while frustrating, does not render Plaintiffs' breach of implied warranty of merchantability claim implausible.

Jamco also argues that Plaintiffs must plead the dates at issue in order for Jamco to determine whether to assert a statute of limitations defense. Jamco Mot. 6. The statute of limitations for a claim for breach of implied warranty is four years from the date of breach, which occurs when tender of delivery of the good is made. Md. Code Ann., Com. Law § 2-725 (2014). Here, Plaintiffs have not alleged when exactly the subject tool cart was delivered to

Case 1:14-cv-01520-SAG   Document 55   Filed 02/20/15   Page 9 of 12

CSX, but claim that "at some time prior to October 5, 2013, believed to be a relatively short period of time before the accident," CSX purchased the subject tool cart from Jamco. Compl. ¶ 38. Jamco frames this lack of information as a fatal flaw in Plaintiffs' pleading. However, Plaintiffs need not plead in anticipation of an affirmative defense. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses."). Thus, dismissal is not warranted for the lack of an exact date of tender in Plaintiffs' Complaint. Instead, Jamco can revisit this assertion if discovery establishes that the subject cart was not tendered for delivery within four years before Plaintiffs' claim was filed.

### ii. Breach of Implied Warranty of Fitness for a Particular Purpose

Unlike a claim for breach of implied warranty of merchantability, a claim for breach of implied warranty of fitness for a particular purpose does not require proof of a defect. *Grinage*, 840 F. Supp. 2d at 871. This claim does, however, require that "the buyer have a 'particular purpose' and that the seller have reason to know of that particular purpose." *Id.* (citing Md. Code Ann., Com. Law § 2–315 (2011)). "A particular purpose 'must be peculiar to the buyer as distinguished from the ordinary or general use to which the goods would be put by the ordinary buyer.'" *Id.* (quoting *Ford Motor Co.,* 365 Md. at 344, 779 A.2d at 375).

Plaintiffs concede that they currently lack sufficient information to assert a warranty of fitness claim. Pl. Opp. 7–8. Plaintiffs are correct—there is no indication that CSX had a particular purpose for the subject tool cart that differed from that of any other purchaser of the tool cart. In fact, Plaintiffs' Complaint states that "CSXT purchased [the tool cart] for the particular purpose for which it was designed (i.e. carrying and transporting objects)," which

9

expressly refutes the existence of a warranty of fitness claim. *See Bond v. Nibco, Inc.,* 96 Md. App. 127, 137–38, 623 A.2d 731, 736 (1993) (holding that a complaint failed to state a claim for warranty of fitness because plaintiff "nowhere alleged that he bought the [products] for a 'particular purpose' that in any way differed from the 'ordinary purpose' for which these [products] might be used"). This claim therefore must be dismissed.

In their Opposition, Plaintiffs request that they be granted leave to file a fourth amended complaint in the event that discovery produces the evidence necessary to establish a warranty of fitness claim. Plaintiffs' premature request is denied. A request for leave to amend should be made in a separate motion, not buried within an opposition.[5] A determination whether Plaintiffs meet the standard for amending the complaint will properly be made if and when they formally seek to amend.

### 3. Strict Liability

Plaintiffs' final claim in Count II is for strict liability. "To recover on a theory of strict liability in Maryland, a plaintiff must establish that: (1) the plaintiff was the user or consumer of an alleged product; (2) the defendant was the seller of the product and at the time of sale was engaged in the business of selling such a product; (3) at the time of sale the product was defective; (4) the product reached the plaintiff without substantial change in the condition in which it was sold; (5) the defect made the product unreasonably dangerous to the plaintiff; and (6) the defect proximately caused plaintiff's injuries." *Hood v. Ryobi North America, Inc.*, 17 F. Supp. 2d 448, 450 (D. Md. 1998) (citing *Phipps v. General Motors Corp.*, 278 Md. 337, 363 A.2d 955 (1976); Restatement (Second) of Torts § 402A (1965)). "The relevant inquiry in a

---

[5] *See Federal Rules of Civil Procedure, Rules and Commentary*, Rule 12, Defenses and Objections ("The plaintiff must be sure to follow the procedure for seeking leave under Rule 15(a)(2). Typically, the plaintiff is required to make an explicit motion (arguments and requests buried in briefs opposing the motion to dismiss usually will not do) and specify how the plaintiff would remedy the alleged deficiencies (usually by submitting a copy of the proposed amended complaint).").

strict liability action focuses not on the conduct of the manufacturer but rather on the product itself." *Phipps,* 278 Md. at 344, 363 A.2d at 958.

Jamco alleges that Plaintiffs failed to plead specific facts showing a claim for relief under strict products liability. Jamco Mot. 7. In particular, Jamco claims that Plaintiffs failed to allege specific facts for an improper warning claim—"as to what the danger was that required a warning and the nature of any warnings that should have been made by Jamco." *Id.* Plaintiffs' Complaint indeed sets forth sufficient claims for strict liability for Jamco's alleged design defect and manufacturing defect: Plaintiffs allege that Mr. Montgomery was the user and Jamco the seller of the tool cart, and that Jamco was in the business of selling such products; that the subject cart was unreasonably dangerous because of improper and/or defective welds and/or manufacture, and was unable to safely perform its function; that the subject cart was in this condition when it left the Jamco facility and was not substantially changed from that time until Mr. Montgomery's injury; and that the defect in the cart that made it unreasonably dangerous to use caused Mr. Montgomery's injuries when the cart collapsed as he placed a tool box on it. *See* Compl. ¶ 58; *see also id.* ¶¶ 39–41, 54, 60–62.

However, like Plaintiffs' negligent failure to warn claim, Plaintiffs' failure to warn claim under strict liability is insufficient.[6] In Maryland, a negligent failure to warn claim is "nearly identical" to a strict liability failure to warn claim. *Mayor and City Council of Baltimore v. Utica Mut. Ins. Co.*, 145 Md. App. 256, 288, 802 A.2d 1070, 1089 (2002); *see also Gourdine v. Crew*, 177 Md. App. 471, 478, 935 A.2d 1146, 1150 (2007) ("Our analysis of whether a duty is owed to a plaintiff in a failure to warn case is the same whether recovery is sought under a negligence or a strict liability in tort theory."). Under either theory, a manufacturer is not liable

---

[6] Failure to warn is not an independent theory of liability. Rather, "failure to warn as a cause of action only states a claim in the context of forms of tort liability recognized in Maryland." *Morgan v. Graco Children's Prods., Inc.*, 184 F. Supp. 2d 464, 466 (D. Md. 2002).

for failure to warn or for providing an inadequate warning unless it had knowledge, or should have had knowledge, of the presence of a latent danger in the product. Here, there was no "inherent and hidden danger" in the tool cart, and thus no duty to warn. Plaintiffs' strict liability failure to warn claim likewise fails on its face.

Lastly, although the parties did not brief Plaintiffs' final count in their Complaint—Mrs. Montgomery's loss of consortium claim—I find that the Complaint sufficiently states a cause of action for this claim and thus will not be dismissed.

## IV. CONCLUSION

Plaintiffs undoubtedly could have organized their Complaint in a more clear and efficient manner. However, the disorganization of the Complaint does not render all of the claims insufficient. For the reasons explained herein, Jamco's Motion to Dismiss Third Amended Complaint [ECF No. 38] is GRANTED as to Plaintiffs' negligent failure to warn claim and strict liability failure to warn claim under Count II, GRANTED as to Plaintiffs' breach of express warranty claim under Count II, GRANTED as to Plaintiffs' breach of implied warranty of fitness for a particular purpose claim under Count II, and DENIED as to all other claims in Count II and Count III. As explained *supra*, Plaintiffs' counsel is directed to re-format the Complaint such that each surviving cause of action is alleged in a separate count. Plaintiffs shall file their re-formatted Complaint on ECF by Monday, March 2, 2015.

A separate Order follows.


Dated: February 20, 2015

                                                                 /s/
                                       Stephanie A. Gallagher
                                       United States Magistrate Judge