UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 27, 2015

LETTER TO COUNSEL

RE: *Lou Montgomery and Melissa Montgomery H/W v. CSX Transportation, Inc. and Jamco Products, Inc.*
Civil Case No. SAG-14-1520

Dear Counsel:

I have reviewed Plaintiffs Lou and Melissa Montgomery's ("Plaintiffs") Motion to Compel More Specific Answers [ECF No. 72], as well as the Response filed by Defendant Jamco Products, Inc. ("Jamco"), [ECF No. 73]. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). For the reasons set forth below, Plaintiffs' Motion will be GRANTED in part, and DENIED in part.

## I. Background

Plaintiffs filed a lawsuit against CSX Transportation, Inc. ("CSXT"), in May 2014 for injuries Mr. Montgomery sustained during an accident at his workplace, the CSXT Cumberland Yard ("CSXT Cumberland"). *See* [ECF No. 1]. In June 2014, Plaintiffs amended their complaint to sue Jamco, the manufacturer of the cart allegedly involved in Mr. Montgomery's accident, for negligence, breach of warranties, strict products liability, and loss of consortium. *See* [ECF Nos. 14, 16]. The parties' Scheduling Order set a discovery deadline of October 13, 2015. *See* [ECF No. 64]. On August 31, 2015, this Court granted Jamco's timely motion to extend the discovery deadline to January 11, 2016. *See* [ECF Nos. 74, 75]. Plaintiffs filed the instant Motion to Compel More Specific Answers from Jamco on August 17, 2015, and Jamco's Response followed. *See* [ECF Nos. 72, 73].

Both parties dispute the adequacy of many of Jamco's Answers to Plaintiffs' Interrogatories and Responses to Plaintiffs' Document Production Requests. Specifically, the following Answers and Responses remain in contention: Jamco's Answers to Plaintiffs' Interrogatories Nos. 1, 3, 4, 5, 6, 7, 13, 14, and 15; and Jamco's Responses to Plaintiffs' Requests for Document Production Nos. 1, 2, 3, 5, 9, 10, 11, 12, 15, 16, 18, 19, and 20. I will address each of these disputes in turn.

## II. Procedural Matters

### A. Plaintiffs' Local Rule 104.7 Certification

Local Rule 104.7 and Federal Rule of Civil Procedure 37 require that counsel confer regarding discovery disputes and make a good faith effort to settle disputes without court intervention. Loc. R. 104.7 (D. Md. 2014); Fed. R. Civ. P. 37(a)(1). This Court will not contemplate discovery motions unless the moving party files a certificate reciting either the date, time, and place of the discovery conference between the parties, and the names of the participants therein, or certifying that the parties attempted to hold a conference but were unsuccessful. *See* Loc. R. 104.7 (D. Md. 2014). Pursuant to these rules, Plaintiffs filed a Certification of Compliance along with their Motion to Compel, stating that the details of their good faith efforts to resolve the discovery disputes prior to filing their motion are listed in paragraphs two through thirteen of their motion. *See* [ECF No. 72].

Plaintiffs' assertion of compliance with Local Rule 104.7 lacks merit. The correspondence between Plaintiffs and Jamco from March 17 to June 23, 2015, cited in paragraphs two through eleven of Plaintiffs' motion, concerns Jamco's failure to timely respond to Plaintiffs' interrogatories and requests for document production, which, of course, took place prior to Jamco serving its discovery responses on July 7, 2015. Pls.' Mot. to Compel ¶¶ 2-11. The only evidence certifying an attempt to hold a conference about the allegedly inadequate responses comes in paragraph thirteen, wherein Plaintiffs state that on July 13, Plaintiffs' counsel telephoned and left a voicemail for Jamco's counsel, and then followed up by email, to request that Jamco correct three deficiencies in its discovery responses. *Id.* at ¶ 13, Ex. I; Def.'s Opp. Ex. 2. Neither Plaintiffs nor Jamco indicate that there was any further correspondence regarding Jamco's insufficient discovery responses after July 13 and before August 17, when Plaintiffs served the instant motion. *See* Pls.' Mot. to Compel; Def.'s Resp. to Pls.' Mot. to Compel.

Plaintiffs' single email regarding the sufficiency of Jamco's discovery responses is inadequate to satisfy Rule 104.7's requirements. *See Kemp v. Harris*, 263 F.R.D. 293, 297 (D. Md. 2009) ("Here, although Defense counsel filed a Certificate of Good Faith . . . the only effort he indicated was the e-mail he sent on July 31, 2009. . . . Therefore, notwithstanding his certification, Defense counsel did not make a good faith effort."). Because Plaintiffs' Certification is deficient, and Plaintiffs did not make a sincere effort to resolve the discovery dispute, this Court is not required to hear their motion. *See Madison v. Howard County, Md.*, 268 F.R.D. 563, 564 (D. Md. 2010). Nevertheless, to expedite this case, this Court has chosen to resolve the issues at hand. *Id.* at 564-65. Future failure to adhere to the Local Rules will result in denial of the pending motion.

## III. Discovery Disputes

### A. Interrogatory No. 1

Plaintiffs' Interrogatory No. 1 asks Jamco to affirm whether Jamco manufactured particular carts depicted in a photograph attached to the interrogatory, and additionally requests that Jamco

identify the carts' model numbers, product names, and purposes, as well as the model number of the cart involved in Mr. Montgomery's accident. Pls.' Mot. to Compel Ex. G at 1. Jamco responded that "it is impossible to tell from the photographs attached" whether it indeed manufactured the carts, but it identified the model number and dimensions of the cart involved in Mr. Montgomery's accident, which it inspected on May 28, 2015. *Id.* Plaintiffs claim that Answer No. 1 is deficient because Jamco "has not provided the model number, model name, and the purpose of the particular cart" involved in Mr. Montgomery's accident. Pls.' Mot. to Compel Schedule A at 1. Jamco contends, however, that the catalog provided in its Response to Document Production Request No. 1 contains all of the relevant information about the cart. Def.'s Resp. to Pls.' Mot to Compel 2.

Jamco's inclusion of the company catalog in the documents it provided to Plaintiffs is sufficient to answer the questions contained in Plaintiffs' Interrogatory No. 1. In its Answer to Interrogatory No. 1, Jamco specified that the cart it inspected on May 28, 2015, which Plaintiffs allege is the cart involved in Mr. Montgomery's accident, is a "Model SL236." Page eleven of Plaintiffs' Motion to Compel, Exhibit G, provides a picture of a Model SL cart and clarifies that the cart has a "[l]ow flush top shelf for shorter lift of heavier items," and a 1200 pound weight limit. Pls.' Mot. to Compel Ex. G at 11. Moreover, page ten of Exhibit G, which contains a copy of an additional page of Jamco's catalogue, states that "Jamco's all welded construction is extra heavy duty for durability of products used to store or transport materials such as mobile & fixed workstations, transporters, and storage cabinets." *Id.* at 10. This description is adequate to identify the "purpose" of the cart. Therefore, Jamco is not required to produce a more specific answer to Interrogatory No. 1.

**B. Interrogatories Nos. 3, 4, 5, and 13**

Interrogatories Nos. 3, 4, 5, and 13 all regard the manufacture of Jamco's carts and the safety standards to which they are subject. Because they concern the same topics, these interrogatories can be addressed collectively. For each interrogatory, Plaintiffs object that Jamco's Answers do not provide sufficient detail.

Plaintiffs' Interrogatory No. 3 asks Jamco to "describe the process used to manufacture the cart, with particular attention to the various metal pieces of the subject or similar cart." Pls.' Mot. to Compel Ex. G at 2. Jamco's Answer states that the cart's "metal components" come from third parties, and that the cart is manufactured by welding "the component parts together, except for the wheels. The assembled parts are then ground, cleaned, and painted. Then the caster wheels are assembled to the cart." *Id.* at 2. In its Response to Plaintiffs' motion, Jamco reasserts that this description is sufficient because the cart is "of a relatively simple construction." Def.'s Resp. to Pls.' Mot. to Compel 3. I agree. Jamco's Answer responds appropriately to Plaintiffs' question by describing the cart's manufacturing process and identifying how the metal components are integrated into the cart. Therefore, Jamco is not required to supplement its Answer to Interrogatory No. 3.

Plaintiffs' Interrogatory No. 4 asks Jamco to "describe the process used to assemble the various metal pieces into the subject or similar cart." Pls.' Mot. to Compel Ex. G at 4. In response, Jamco directs Plaintiffs to "see [Jamco's] Answer to Interrogatory No. 3" and informs Plaintiffs that "MIG welds are used." *Id.* This Answer is satisfactory. Jamco's Answer to Interrogatory No. 3 indeed identifies that the component parts of the cart are welded by a welder. Coupled with Jamco's

statement that "MIG welds are used," which reveals the specific type of welding process, the Answer to Interrogatory No. 4 is sufficient to inform Plaintiffs of the "process used to assemble the various metal pieces" into the cart.

Plaintiffs' Interrogatory No. 5 requests that Jamco "explain the entire quality control process" for the cart in question or a similar cart. Pls.' Mot. to Compel Ex. G at 2. Jamco answered that "the welder keeps a constant lookout for quality control as the component parts are welded together," and that "another person is in charge of grinding and cleaning," as well as inspecting the product, "including the welds and materials for quality control." *Id.* Finally, Jamco noted that "the person who installs the caster wheels also inspects prior work done for quality." *Id.* Plaintiffs assert that this response is deficient because, "to merely indicate that someone keeps a look out for quality control is insufficient." Pls.' Mot. to Compel Schedule A at 3. Plaintiffs further claim that the Answer "does not indicate what the defendant considers to be quality control, what the welder and other employees are looking for, the type of tests that are performed on the product, and other details." *Id.* In its Response to Plaintiffs' instant motion, Jamco supplemented its Answer, stating that the "welding lead (foreman) also spot-checks carts as they are produced. He looks over welds for quality." Def.'s Resp. to Pls.' Mot. to Compel 4.

Jamco's initial and supplemental Answers do not adequately respond to Plaintiffs' inquiry. It is not apparent from the responses to Interrogatory No. 5 that Plaintiffs and Jamco have a mutual understanding of the meaning of quality control with respect to the carts, and Jamco's understanding of "quality" is not clear from the context of its response. *Contra Adams v. Allstate Ins. Co.*, 189 F.R.D. 331, 333-34 (E.D. Pa. 1999) ("Defendant objects that Plaintiff's Requests for Production . . . are vague and unintelligible . . . Although plaintiff has not defined the phrases . . . the meaning of those phrases seems clear in the contexts of these requests."). Jamco is directed to supplement its Answer by indicating how it defines "quality" and "quality control," and the potential problems for which its welders and employees watch, **within fourteen (14) days from the date of this Order.**

Finally, Plaintiffs' Interrogatory No. 13 asks whether Jamco contends that the cart was "abused, misused, or substantially changed at any time prior to husband-plaintiff's October 5, 2013 accident." Pls.' Mot. to Compel Ex. G at 5. Jamco responded by referring Plaintiffs to its Answer to Interrogatory No. 11, which Plaintiffs found deficient because, while Jamco's Answer to Interrogatory No. 11 "states the general conditions which would have constituted abuse, misuse, or substantial change, it does not set forth Jamco's contentions concerning whether those circumstances occurred." Pls.' Mot. to Compel Schedule A at 6. Jamco maintains that the Answer to Interrogatory No. 11 sufficiently responds to Interrogatory No. 13 and reiterates its initial answer to Plaintiffs' question: that "Jamco has no personal knowledge of the "specifics of how the card was used, misused, or abused," and "cannot set forth specific knowledge" of such. Def.'s Resp. to Pls.' Mot. to Compel 4-5.

Jamco's Answer to Interrogatory No. 13, which points Plaintiffs to its Answer to Interrogatory No. 11, is adequate. In both its Answer No. 11 and its Response to the Plaintiffs' Motion, Jamco details the basis for its lack of knowledge, and lack of ability to speculate, about whether Mr. Montgomery caused the accident or whether the cart had been abused, used, or changed at a prior time. Plaintiffs have offered no substantial evidence to rebut Jamco's statements and to thereby bolster their contention that Jamco is dishonest about its knowledge. Jamco's consequent

assertion that it has no personal knowledge of how the cart was used is well-founded, and appropriately answers the question asked. Jamco is not required to supplement its Answer further.

### C. Interrogatories Nos. 6 and 7

Plaintiffs' Interrogatories Nos. 6 and 7 ask Jamco to identify all relevant safety standards to which its carts are subject.

Interrogatory No. 6 requests that Jamco "describe in detail all testing that the [cart] or a similar cart undergoes after it has been manufactured or assembled" to ensure that it complies with Jamco's standards and "any other relevant government, industry, OSHA, ANSI, or ASTM standards or regulations." Pls.' Mot. to Compel Ex. G at 3. The interrogatory also asks Jamco to provide a list of all such regulations and standards applicable to the cart. *Id.* Jamco initially objected to Interrogatory No. 6 on the basis that it "invades attorney-client privilege and potentially seeks legal strategy regarding legal standards or regulations." *Id.* In its Response to Plaintiffs' Motion to Compel, however, Jamco supplements its Answer to Interrogatory No. 6 by describing the "real world testing" process to which the cart was subject after it was designed in 1998. Def.'s Resp. to Pls.' Mot to Compel 4. Given that Jamco's Supplemental Answer responds to Plaintiffs' question and does not raise further objections, this Court will consider Jamco's objection to this interrogatory withdrawn. Further, this Court finds Jamco's Supplemental Answer sufficient to address Plaintiffs' inquiry regarding the testing that the cart has undergone.

Interrogatory No. 7 asks Jamco to provide a list of relevant government, industry, OSHA, ANSI, or ASTM standards or regulations applicable to the cart. Pls.' Mot. to Compel Ex. G at 3. Jamco objected to this interrogatory as "potentially calling for information which is attorney-work product" and "seek[ing] to shift the burden of proof and production from Plaintiff to Defendant." *Id.* Jamco's Supplemental Answer to Interrogatory No. 7 now states that "there are no specific industry standards" governing the cart. Def.'s Resp. to Pls.' Mot. to Compel 4. As above, Jamco's Supplemental Answer contains no further mention of work product protection for the information sought. This Court will therefore consider the objection to Interrogatory No. 7 withdrawn, and finds Jamco's Supplemental Answer to this interrogatory adequate.

### D. Interrogatory No. 14; Request for Document Production No. 20

Plaintiffs' Interrogatory No. 14 and Request for Document Production No. 20 each pursue information from Jamco about the structural integrity of Jamco's carts, and any past incidents in which the carts failed to perform. Thus, these two requests can be discussed together.

#### 1. Interrogatory No. 14

Interrogatory No. 14 asks whether Jamco is aware of "any other incidents where similar carts failed or broke during use" in the ten years prior to Mr. Montgomery's accident, and, if Jamco is aware of any such incidents, requests that Jamco specify details regarding each incident, such as the model of the cart involved, the date of the incident, the nature of the break, and the usage of the cart. Pls.' Mot. to Compel Ex. G at 5. In its initial Answer to Interrogatory No. 14, Jamco simply stated, "No." *Id.* Plaintiffs find this response deficient on the ground that, "based on discovery to date

plaintiff believes that this answer may be inaccurate," since several of the carts manufactured by Jamco and sold to CSXT had "faulty welds," and it is thus "improbable" that "there were no other circumstances where similar carts failed or broke during use." Pls.' Mot. to Compel Schedule A at 6-7. Jamco maintains in its Response to Plaintiffs' motion that it is "not aware of any other" similar accidents involving Jamco carts within the past ten years. Def.'s Resp. to Pls.' Mot. to Compel 5. Jamco adds, by way of explanation, that "the discovery referred to in the "deficiency" set out by Plaintiffs is based on deposition testimony by [co-defendant] CSXT employees," in which the employees stated that they visually inspected all of the carts in the "CSXT shop" following Mr. Montgomery's accident. *Id.* at 5-6. Jamco asserts that the employees' testimony "could not indicate which of these carts were manufactured by Jamco and which were not."

Under penalty of sanctions, Jamco has submitted that it is not aware of any other incidents in which its carts failed or collapsed during use, and that it cannot speculate about whether its carts were among those inspected by CSXT's employees. *See Baltimore Scrap Corp v. David J. Joseph Co.*, No. CIV L-96-827, 1996 WL 720785, at *13-14 (D. Md. Nov. 20, 2006) (holding that a subpoenaed third party was required to produce documents requested by Plaintiff after Plaintiff contended that there was "substantial evidence, including the privilege log produced by [Defendant]" showing that there were additional documents in the custody of the third party"); *Basch v. Westinghouse Elec. Corp.*, 777 F.2d 165, 174 n.20 (4th Cir. 1985) (noting that several courts have expanded Rule 37(d)'s sanctions for failure to answer interrogatories to "encompass answers which were evasive or misleading."). Plaintiffs have not adduced any evidence suggesting that Jamco's response is inaccurate. Jamco is thus not required to supplement its Answer to Interrogatory No. 14.

### 2. Request for Document Production No. 20

Document Request No. 20 seeks "all documents in any way relating to any other incidents during the 10 years before [Mr. Montgomery's] accident where similar carts failed or broke." Pls.' Mot. to Compel Ex. H at 5. Jamco initially responded that it possessed no such documents. *Id.* In response to Plaintiffs' objection that Plaintiffs "do not believe this answer is accurate," Jamco maintains that it is unaware of any other similar incidents. Def.'s Resp. to Pls.' Mot. to Compel 11. As above, Jamco's response is satisfactory. Absent concrete evidence that Jamco is concealing a former cart-malfunctioning incident, this Court cannot compel Jamco to "revisit" Plaintiffs' request and "to search further" for documents that it claims it does not possess. *See Baltimore Scrap Corp.*, 1996 WL 720785, at *13-14.

### E. Interrogatory No. 15; Request for Document Production No. 19

Plaintiffs' Interrogatory No. 15 requests that Jamco provide detailed information about Jamco's insurance policies. Similarly, Document Request No. 19 asks for copies of Jamco's insurance policies.

### 1. Interrogatory No. 15

Plaintiffs' Interrogatory No. 15 asks Jamco to provide information about "each and every liability or other insurance policy in force" on the date of Mr. Montgomery's accident, and requests specific details about each policy. Pls.' Mot. to Compel Ex. G at 5. Jamco responded that it is

"insured under a policy of general liability insurance issued by ACE Insurance Company." *Id.* Plaintiffs argue that Jamco's Answer does not provide sufficient detail relative to Plaintiffs' question. In its Supplemental Answer to Interrogatory No. 15, Jamco agrees that it will provide additional information regarding the "details of its general liability insurance policy, policy limits, and any other applicable coverages." Def.'s Resp. to Pls.' Mot. to Compel 6. If it has not already done so, Jamco is directed to provide such additional information **within fourteen (14) days from the date of this Order.**

### 2. Request for Document Production No. 19

Document Request No. 19 seeks "copies of all insurance policies and corresponding declarations pages, in their entirety, in force at the time of [Mr. Montgomery's] accident." Pls.' Mot. to Compel Ex. H at 4-5. Jamco initially stated that it would give Plaintiffs "a copy of the declaration page." Plaintiffs contend that this Response is deficient because "there is no reason that the defendant has not provided a full and complete copy of all insurance policies," and, furthermore, that "the defendant has not yet even provide [sic] that." In its Supplemental Response, Jamco affirms that it will provide copies of the insurance policies with an anticipated delivery date of twenty-one days from the filing of its Response to Plaintiffs' Motion on August 26, 2015. If Jamco has not already provided copies of its insurance policies in full, as well as copies of all of the policies' declaration pages, Jamco is directed to provide all of the documents requested **within fourteen (14) days from the date of this Order.**

### F. Requests for Document Production Nos. 1, 2, 3, and 11

Document Production Requests Nos. 1, 2, 3, and 11 seek information related to the operation and functions of the cart involved in Mr. Montgomery's accident. I will address these requests together.

Document Production Request No. 1 seeks all instruction manuals, parts lists, and assembly and operations directions that accompany Jamco's cart to end users. Pls.' Mot. to Compel Ex. H at 1. In response to Request No. 1, Jamco states that the cart "came fully assembled" and directs Plaintiffs to its website, "which contains catalogue, warranty and capacity information." *Id.* Jamco's Response also directs Plaintiffs to "attached excerpts of a prior catalogue" for the same cart model. *Id.* Plaintiffs claim that this Response is deficient because "none of the documents requested were provided," and "Defendant's reference to the current website does not guarantee that the materials requested at the time the cart was manufactured and distributed are the same." Pls.' Mot. to Compel Schedule A at 8. Jamco counters that "the only material available in terms of operations, directions, manuals, and other literature are identified as posts on the internet site of Jamco." Def.'s Resp. to Pls.' Mot. to Compel 6. Further, Jamco states that "Response No. 2 also indicates that the representations currently on Jamco's website have not changed." *Id.* Indeed, Jamco's Response to Request No. 2 affirms that "Defendant believes that the representations currently on the website for this model cart have not changed." Under penalty of sanctions, *see* Fed. R. Civ. P. 37(d), Jamco asserts that it does not have any of the requested documents other than those found in its attached catalogue and on its website, to which it appropriately directs Plaintiffs in its Response pursuant to Federal Rule of Civil Procedure 34. *See* Fed. R. Civ. P. 34(b)(2)(E)(ii). Therefore, Jamco is not required to further supplement its Response.

Document Production Request No. 2 asks Jamco to provide all copies of instructional videos, photographs, or other digital or Internet-based instructional material that it provides, or that are available, to end users and purchasers of the cart involved in the accident. Pls.' Mot. to Compel Ex. H at 2. In its initial Response to Request No. 2, Jamco directed Plaintiffs to its website, and informed Plaintiffs that it "believes that the representations currently on the website for this model cart have not changed." *Id.* Likewise, Document Production Request No. 3 asks for "any and all documents containing specifications for said carts, including but not limited to weigh capacity of the entire cart on each shelf of the cart." *Id.* In its initial response to Request No. 3, Jamco directed Plaintiffs to its Response to Request No. 2. Plaintiffs claim the same deficiency for both responses: that Jamco only "believing" that the information contained on its website is applicable to the cart involved in Mr. Montgomery's accident is insufficient to confirm the cart's specifications.

Jamco argues that its Response to Document Request No. 2 contains no deficiencies because that Response "states that the representations regarding this model currently found on Jamco's website have not changed." Jamco's Response suitably answers Plaintiffs' inquiry by directing Plaintiffs to the electronic location of the documents sought. *See* Fed. R. Civ. P. 34(b)(2)(E)(ii). Further, in directing Plaintiffs to its company website and affirming, under penalty of sanctions, that the representations of the model of cart in question have not changed, Jamco's Response implies that it possesses no other documents than those found on its website. Plaintiffs provide no evidence to indicate that Jamco possesses additional documents, and, as such, Jamco's certifying that it lacks the documents sought is acceptable to satisfy Plaintiffs' document production request. *See Baltimore Scrap Corp.*, 1996 WL 720785, at *13.

With respect to Document Request No. 3, Jamco offers in its Supplemental Response that it will provide "shop drawings" of the cart to Plaintiffs. Def.'s Resp. to Pls.' Mot. to Compel 7. Jamco reaffirms that, "[o]therwise, Defendant has represented that the information currently posted on the website . . . is not changed from 2011." As indicated above, this Response is sufficient. If it has not already done so, Jamco is directed to provide the shop drawings to Plaintiffs **within fourteen (14) days from the date of this Order.**

Finally, Document Request No. 11 seeks "any sales catalogs, sales brochures, advertising material, or similar documents concerning" the cart involved in Mr. Montgomery's accident or similar carts. Pls.' Mot. to Compel Ex. H at 3. Jamco initially responded, "See Response to Request No. 1." *Id.* Plaintiffs allege that this response is deficient because "Defendant's reference to the current website does not guarantee that the materials requested, at the time that this cart was manufactured and distributed, are the same." Pls.' Mot. to Compel Schedule A at 11. In its Response to Plaintiffs' Motion to Compel, Jamco maintains that its "Response[s] to Request[s] for Production Nos. 1, 2, and 3 thoroughly respond to [Plaintiffs'] Request [No. 11]." Def.'s Resp. to Pls.' Mot. to Compel 9. I agree. Jamco certified in its previous responses to Plaintiffs' document requests that the information contained on its website is relevant to the cart that injured Mr. Montgomery. Further, Jamco has provided Plaintiffs with the requested sales catalogs. *See* Pls.' Mot. to Compel Ex. G at 7-12; H at 6-9.

### G. Requests for Document Production No. 5, 15, and 18

Document Requests Nos. 5, 15, and 18 ask Jamco to produce any items and supporting documents that it possesses related to Mr. Montgomery and his accident at CSXT Cumberland. Because these requests address the same category of documents, and because Jamco's response to each request is the same, I will discuss these requests collectively.

Request No. 5 asks Jamco to provide all documents in its possession pertaining to Mr. Montgomery's accident. Pls.' Mot. to Compel Ex. H at 2. Jamco initially objected to Plaintiffs' request on the grounds of privilege and work product protection. *Id.* In its Supplemental Response to Plaintiffs' inquiry, however, Jamco now claims that it possesses no documents requested in No. 5 "except for those previously identified in the case and in discovery and those provided by Plaintiff or Co-Defendant CSXT." Def.'s Resp. to Pls.' Mot. to Compel 8. This Response is sufficient. *See Nw. Home Designing, Inc. v. Golden Key Const., Inc.*, No. 11-CV-05289 RBL, 2012 WL 470260, at *2 (W.D. Wash. Feb. 10, 2012) ("[I]f defendant does not possess any documents responsive to [Plaintiff's discovery] request, then it should so state."); *Ghawi v. Law Offices of Howard Lee Schiff P.C.*, No. 3:13-CV-115-JBA, 2015 WL 2374577, at *4 (D. Conn. May 18, 2015) ("In response to Request for Production No. 4, the Defendants provided "some of those documents"; to the extent that more documents exist and such documents are not already in plaintiff's possession, the Defendants shall produce such responsive documents . . .").

Plaintiffs' Document Request No. 15 seeks "all photos, videos, tapes, or similar items" of Mr. Montgomery in Jamco's possession or control. Pls.' Mot. to Compel Ex. H at 4. While Jamco initially claimed that any such digital footage would be covered by work product or attorney-client privilege protections, Jamco now amends its Response, and states that it "possesses no items requested in No. 15 except for those previously identified" by the Plaintiffs or co-Defendant CSXT. Def.'s Resp. to Pls.' Mot. to Compel 10. Because Jamco's Supplemental Response to Document Request No. 15 does not restate any of its initial objections, I will consider those objections withdrawn. Further, Jamco's assertion, under penalty of sanctions, that it does not possess any of the documents, is sufficient.

Finally, Document Request No. 18 seeks all medical records or abstracts relating in any way to injuries sustained by Mr. Montgomery, as well as any medical reports relating to the treatment of similar injuries prior and subsequent to the accident. Pls.' Mot. to Compel Ex. H at 4. Jamco initially objected to Plaintiffs' request on work product doctrine grounds, but, in its Supplemental Response, makes no further mention of an objection and merely asserts that it "does not possess any such documents except those provided by Plaintiff and Co-Defendant CSXT." Def.'s Resp. to Pls.' Mot. to Compel 11. As stated in the discussion of Requests Nos. 5 and 15, this Response is satisfactory. *See Nw. Home Designing, Inc.*, 2012 WL 470260, at *2; *Ghawi*, 2015 WL 2374577, at *4.

### H. Requests for Document Production Nos. 9, 10, 12, and 16

Requests Nos. 9, 10, 12, and 16 ask Jamco to provide documents regarding the investigations that Jamco is undertaking related to Mr. Montgomery's accident and the instant litigation. Jamco objects to each request on the basis that the information sought is privileged or protected by the work

product doctrine. In addition, Jamco states that it has not waived any of these objections because it requested additional time from Plaintiffs to serve its discovery responses. Both Jamco's assertion that it is still within its rights to object to Plaintiffs' discovery requests under the Federal Rules of Civil Procedure, as well as Jamco's objections based on privilege and work product, are flawed.

   **1. Jamco's Claim that it Did Not Waive its Objections to Plaintiffs' Discovery Requests is Mistaken**

Plaintiffs first allege that Jamco's Responses to Requests Nos. 9, 10, 12, and 16 are deficient because Jamco waived all objections by failing to respond within thirty days of the Document Requests' service. Pls.' Mot. to Compel Schedule A at 11-13. In its Response to Plaintiffs' Motion to Compel, Jamco states, with respect to all four Requests, that it "has not waived its right to object" because Plaintiff agreed to an extension of time for the provision of discovery responses. This contention is the first defect in Jamco's responses to Requests Nos. 9, 10, 12, and 16.

Federal Rule of Civil Procedure 33 sets a thirty day deadline from date of service for parties to respond to discovery requests. Fed. R. Civ. P. 33(b)(2). Along with this thirty day deadline, Federal Rule 33 further provides that any ground for objecting to an interrogatory or document request is waived if not timely stated within thirty days of service, unless the non-responsive party can show good cause for the court to excuse its lateness. Fed. R. Civ. P. 33(b)(4); *see also* Fed. R. Civ. P. 37(d); Loc. R. 104.8 (D. Md. 2014) (permitting a party who has propounded interrogatories but has not received answers or objections within thirty days to file an immediate motion to compel and for sanctions).

Here, Plaintiffs appropriately served Jamco with interrogatories and document production requests on March 17, 2015, after the Court's Scheduling Order had been set. *See* Pls.' Mot. to Compel Ex. A; Fed. R. Civ. P. 26(d)(1); *Kemp*, 263 F.R.D. at 294. The record is silent on any attempt by Jamco to contact Plaintiffs within thirty days of service to request an extension of time. Jamco then failed to serve its responses on Plaintiffs within the thirty days afforded to it. Only after Plaintiffs' counsel contacted Jamco's counsel on three separate occasions, months after the thirty day deadline had passed, did counsel for Jamco request an extension of two weeks to submit Jamco's discovery responses. Pls.' Mot. to Compel Ex. E, F.

Jamco's initial objections to these four document requests were therefore indeed untimely, and, as Plaintiffs correctly note, this Court could find under Federal Rules of Civil Procedure 33(b)(2) and (b)(4) that Jamco thereby waived its right to object to Plaintiffs' interrogatories, even on the grounds of privilege. *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); Fed. R. Civ. P. 33(b)(2) ("The responding party must serve its answers and any objections within *30 days* after being served with the interrogatories.") (emphasis added); *see also Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 425 (D. Minn. 2012) (finding that Defendant's failure to timely respond or object to interrogatories constituted a waiver of objections, including privilege, even though resulting prejudice to the Plaintiff was unlikely). This Court has held, however, that it would be "too draconian" to allow a party's failure to timely respond to interrogatories to engender a waiver of subsequent claims of privilege. *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 657 (D. Md. 1997). I agree with the Court's finding in *Jayne H. Lee, Inc.*, and thus decline to deem all of

Jamco's remaining objections based on privilege or work product waived due to its late responses.

Even so, it is worth noting that Jamco's contention that its failure to timely object should be excused because "Plaintiff agreed to an extension of time for Defendant to provide discovery responses" misinterprets the standard of timely filing and waivers under both this Court's Local Rules and Federal Rule of Civil Procedure 33. While Federal Rule 33 promulgates consequences for failure to respond within the thirty day deadline, "it is also a truism of civil litigation that interrogatories are seldom answered on time." *Jayne H. Lee, Inc.*, 173 F.R.D. at 654. This Court's Discovery Guideline 8 acknowledges the common difficulty encountered by counsel when trying to submit discovery responses within the short timeframe mandated by the Federal Rules of Civil Procedure. Discovery Guideline 8 provides that an attorney requiring additional time to respond to a discovery request shall contact opposing counsel as soon as practical after receipt of the discovery request, but not later than three days *before* the response is due. Guideline 8.a of the Discovery Guidelines for the United States District Court for the District of Maryland, Loc. R. App. A (D. Md. 2014). Jamco did not attempt to request an extension of time to respond to Plaintiffs' discovery until months after the Rule 33 deadline had passed, and, even then, it was Plaintiffs who made the initial contact between the parties. In light of the Federal and Local Rules as applied to the facts at hand, Jamco's contention that Plaintiffs' agreeing to an extension of time precludes a waiver of its objections is a specious argument.

### 2. Jamco's Bare Assertions of Privilege are Unsuitable to Respond to Plaintiffs' Requests

In addition to its incorrect statement that its untimely request for an extension caused a non-waiver of its objections, the content of the objections contained in Jamco's responses to Requests Nos. 9, 10, 12, and 16, namely, the blanket assertions of privilege and work product without any corresponding privilege logs, is improper. As the boilerplate objection to each Request differs slightly, I will address each objection and response in turn.

Jamco's Supplemental Response to Request No. 9, which asks for documents pertaining to any investigations made regarding Mr. Montgomery's accident, claims that Jamco possesses none of the documents sought except for those previously identified or already provided by Plaintiffs or co-defendant CSXT, and that "the only other documents the request would elicit would be work product or privileged as attorney-client communication." Def.'s Resp. to Pls.' Mot. to Compel 8. Similarly, with respect to Request No. 10, which seeks any documents concerning Mr. Montgomery's accident that Jamco submitted to an insurance company, Jamco states that "any documents potentially requested by No. 10 are clearly compiled in anticipation of litigation and are work product" because "[t]he very nature of reporting an incident by an insured to its insurance carrier is in anticipation of litigation." *Id.* at 9. Jamco also contends that "[t]he only other document responsive [to Request No. 10] would be privileged as communication." *Id.* Finally, as to both the "contents of any investigation file," excluding any references to attorney work product, that Plaintiffs seek in Request No. 12, and "any documents" containing the names and addresses of all individuals contacted as potential witnesses that Plaintiffs seek in Request No. 16, Jamco claims that the documents sought by these two Requests are "clearly compiled in anticipation of litigation and are work product." *Id.* at 8, 9, 10.

Jamco's objections to each of these requests are inappropriate because they invoke the attorney-client privilege and work product protections but fail to specify, beyond a boilerplate assertion of those doctrines' potential applicability, how the information sought is protected. Jamco must provide a corresponding privilege log for all of its Responses to these Requests. *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim"); Guideline 9.c of the Discovery Guidelines for the United States District Court for the District of Maryland, Loc. R. App. A (D. Md. 2014); *see also Hall v. Sullivan*, 231 F.R.D. 468, 470 (D. Md. 2005) (noting that an objection that merely asserts the "attorney work product doctrine" is a "classic boilerplate objection[] of the type that ha[s] been condemned by courts . . . and promote[s] disputes between counsel that require court resolution").

As to Document Production Request No. 9, Jamco is directed to produce a privilege log for the documents pertaining to any investigations or inquiries made concerning Mr. Montgomery's accident **within fourteen (14) days from the date of this Order**. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008). If, upon further investigation, Jamco finds no basis for asserting the privilege and work product protection, Jamco is required to produce the requested documents **within fourteen (14) days from the date of this Order**.

As to Document Production Request No. 10, this Court finds Jamco's objection to producing the insurance documents on the grounds that they are "clearly compiled in anticipation of litigation," because "the very nature of reporting an incident by an insured to its insurance carrier is in anticipation of litigation," conclusory and unpersuasive. Documents prepared in anticipation of litigation are indeed ordinarily non-discoverable under Federal Rule of Civil Procedure 26. *See* Fed. R. Civ. P. 26(b)(3). However, documents prepared specifically for litigation must be distinguished from documents prepared in the ordinary course of business with the "general possibility of litigation in mind." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). Such latter documents, even when litigation ultimately occurs, are not automatically covered by work product immunity. *See id.*; *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983); *United States v. Adlman*, 134 F.3d 1194, 1196 (2d. Cir. 1998). Rather, to be afforded work product protection, a document must be made "*because* of the prospect of litigation when the preparer faces an actual claim or a potential claim." *Nat'l Union Fire Ins. Co.*, 967 F.2d at 984 (emphasis in original).

Several courts have noted that determining the applicability of the work product rule to documents created by an insurance carrier for an insured party, or by an insured party for its insurance carrier, presents a unique problem in discovery proceedings, since it is "the very nature of an insurer's business to investigate and evaluate the merits of claims." *See Video Warehouse of Huntington, Inc. v. Boston Old Colony Ins. Co.*, 160 F.R.D. 83, 85 (S. D. W. Va. 1994); *Nat'l Union Fire Ins. Co.*, 967 F.2d at 984; *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 662 (S. D. Ind. 1991); *Arkwright Mutual Ins. Co. v. Nat'l Union Fire Ins. Co.*, No. 90 Civ. 7811 (AGS), 1994 WL 698298, at *2 (S.D.N.Y. Dec. 13, 1994). Yet, because the determination of work product protection is fact-specific, courts facing work product disputes in the insurance context, specifically, must "be careful not to hold that documents are protected from discovery simply because of a party's ritualistic incantation that all documents created by insurers are made in preparation for litigation." *Weber v.*

*Paduano*, No. 02 Civ. 3392 (GEL), 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003) (internal quotation marks omitted) (finding that documents prepared for an insured party by an insurer were discoverable, even if work product, because of substantial need); *Harrigan v. Elec. Pre–Press Sys., Inc.*, No. 90 Civ. 4081 (MEL), 1992 WL 121438, at *3 (S.D.N.Y. May 15, 1992); *Adlman*, 134 F.3d at 1202. Given the lenience and breadth of the discovery process contemplated by the Federal Rules, this Court finds it imperative that parties claiming work product protection demonstrate by specific and competent evidence that the documents were created in anticipation of litigation. Thus, Jamco is directed to produce a privilege log for the insurance documents sought in Request No. 10, expressly asserting why and how they were prepared as a result of the instant litigation, **within fourteen (14) days from the date of this Order**. If, in the course of preparing its privilege log, Jamco determines that the documents are not in fact protected, Jamco is ordered to produce the documents to the Plaintiffs **within fourteen (14) days from the date of this Order**.

Finally, as to Requests for Document Production Nos. 12 and 16, while Plaintiffs' requests are relatively broad so as to potentially exceed the scope of discovery in violation of Federal Rule of Civil Procedure 26(b)(1), Jamco's bald assertions that the documents requested in Nos. 12 and 16 are "privileged as attorney work product or attorney-client communication," and "clearly compiled in anticipation of litigation," are insufficient. *See Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 356 (D. Md. 2012) ("[A] party may object that [an] interrogatory exceeds the scope of discovery or that it would require the disclosure of . . . privileged or work product protected material. . . . [O]bjections to interrogatories must be specific, non-boilerplate, and supported by particularized facts where necessary to demonstrate the basis for the objection.") (citations and internal quotation marks omitted). Jamco's contentions of privilege and work product in response to Request No. 12 are particularly inadequate because Plaintiffs specifically exclude "any references to mental impressions, legal conclusions or conclusions regarding the merit of the claims and defenses of the instant case, and any litigation strategy or privileged communications" from the documents they seek. If it wishes to maintain its objections to Requests for Document Production Nos. 12 and 16 based on privilege and work product, Jamco is directed to provide a privilege log for the documents sought in both Requests **within fourteen (14) days from the date of this Order**.

## IV. Conclusion

For the reasons discussed above, Plaintiffs' Motion to Compel, [ECF No. 72], is GRANTED IN PART and DENIED IN PART. Jamco is hereby ORDERED to provide Plaintiffs with the information discussed herein, within the deadlines set forth herein. Pursuant to Federal Rule of Civil Procedure 37(a)(5)(C), no fees or expenses will be awarded to either party because relief is being granted in part and denied in part.

Despite the informal nature of this letter, it will be flagged as an Opinion and docketed as an Order.

                                        Sincerely yours,

                                              /s/

                                        Stephanie A. Gallagher
                                        United States Magistrate Judge

*Montgomery v. CSX Transp., Inc., et al.*
Civil Case No. SAG-14-1520
October 27, 2015
Page 14