## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| LOU MONTGOMERY, *et al.,* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No. SAG-14-1520 |
| | * | |
| CSX TRANSPORTATION, INC., *et al.* | * | |
| | * | |
| Defendants. | * | |
| | ****** | |

## MEMORANDUM

Following a workplace accident involving a tool cart, Plaintiffs Lou Montgomery and Melissa Montgomery filed this lawsuit against the cart's manufacturer, Jamco Products, Inc. ("Jamco"), and Mr. Montgomery's employer, CSX Transportation, Inc. ("CSXT"). Now pending is Defendant CSXT's Motion to Exclude Expert Testimony and Motion for Summary Judgment [ECF No. 120]. I have considered that motion, the materials submitted relating thereto, and the oral arguments presented at a hearing on January 11, 2017.[1] *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, CSXT's motion will be granted.

## I.      FACTUAL BACKGROUND

On October 5, 2013, Mr. Montgomery was working as a machinist for CSXT in its shop in Cumberland, Maryland ("Cumberland shop"). Montgomery Dep., 43:6-12. Mr. Montgomery had been employed as a CSXT machinist for approximately nine years. *Id.* at 33:4-6. During

---

[1] In addition to the customary opposition [ECF No. 121, 122] and reply [ECF No. 124] filed by the parties, Plaintiffs filed a "sur response," [ECF No. 129] and CSXT filed an "opposition to the Court's consideration of the Plaintiffs' sur response, or, in the alternative, a response to Plaintiff[s'] sur response." [ECF No. 130]. I have considered all of those filings in adjudicating this motion.

all nine years, various tool carts were used by the machinists in the Cumberland shop. *Id.* at 166:2-4. The tool carts were not all identical. *Id.* at 71:2-8.

On the date of the accident, Mr. Montgomery was assigned to repair a diesel locomotive. *Id.* 77:18-78:16. In order to transport his tools to the locomotive, Mr. Montgomery found a tool cart and pushed it approximately 70 yards to the tool room. He placed a fuel injector on top of the cart and then pushed the tool cart another 100 yards or so to his tool locker. He went into his tool locker, retrieved a small black toolbox weighing 10 or 15 pounds, and placed it on the cart. He then went to pick up a second toolbox weighing approximately 70 to 75 pounds and set in on the cart but, when he did, the cart broke. Mr. Montgomery was jerked forward from the weight of the toolbox, and severely injured his back. *Id.* at 79:15-90:12, 91:20-24.

CSXT's safety rules require employees to inspect all tools and equipment for unsafe conditions before use. *Id.* at 87:21-24, 153:5-19. Mr. Montgomery looked at the cart before using it "and it appeared to be fine." *Id.* at 87:8-89:10. He did not notice any cracks on the cart. *Id.*

Another CSXT employee, Mike Kennell, worked as a boilermaker in the Cumberland shop. Kennell Dep. 7:1-4. Kennell testified that he recalled making repairs to some tool carts prior to Mr. Montgomery's accident, but he could not recall how many carts he had repaired, when the repairs were made, or whether the carts he repaired were Jamco carts. *Id.* at 14:21-16:9, 20:12-15. At the time of the accident, the original welds on the tool cart used by Mr. Montgomery had not been altered or repaired. Clauser Dep. 57:18-58:6.

Mr. Montgomery and his wife filed the instant lawsuit against the manufacturer of the cart, Jamco, under a theory of manufacturing defect, and against CSXT, alleging negligence in violation of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, et seq. *See* [ECF

Nos. 1 and 60].  Specifically, Plaintiffs allege that CSXT failed to provide Mr. Montgomery a reasonably safe place to work.  *See* [ECF No. 60];  Pls.' Opp., [ECF No. 122 at 17-20].

CSXT now seeks to exclude the testimony of Plaintiffs' liability expert pursuant to Rule 702 of the Federal Rules of Evidence, and seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.   EXPERT TESTIMONY

Plaintiffs have retained Craig Clauser, P.E., as their liability expert.  By Plaintiffs' description, Mr. Clauser is "an expert metallurgist with a secondary expertise in industrial safety and quality control."  Pls.' Opp., [ECF No. 122 at 7].

Contrary to Plaintiffs' claim, this Court has not previously ruled that Mr. Clauser's opinion meets all requirements of Federal Rules of Evidence 702 and 703.  *Id.* at 1.  Rather, the Court's prior inquiry was limited to determining whether Mr. Clauser's expert reports and testimony violated 1) the timely disclosure requirement of Federal Rule of Civil Procedure 26(a)(2) and 2) the reliability requirement of Federal Rules of Evidence 702 and 703. *Montgomery v. CSX Transp.*, *Inc.*, 2016 WL 5390809 (D. Md. Sept. 27, 2016) (denying CSXT's motion to strike Mr. Clauser's opinion on the above-stated bases).  The instant motion challenges Mr. Clauser's qualifications as an expert and the foundational basis of his opinion as to CSXT's liability.[2]

### a.  Legal Standard

A witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  Expert testimony is admissible if it will assist the trier of fact, and: (1) is "based on sufficient facts or data;" (2) is "the product of reliable principles and methods;" and (3) the principles and methods have been applied "reliably...to the facts of the

---

[2] The instant motion has no bearing on Mr. Clauser's qualifications to testify as an expert against Jamco.

case." *Id.* The expert testimony also must rest on a reliable foundation and must be relevant. *Daubert v. Merrell Dow Pharm.,* 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) (extending *Daubert* to "the testimony of...other experts who are not scientists"). Where experiential expert testimony "does not rely on anything like a scientific method," it is nevertheless admissible "so long as an experiential witness 'explain[s] how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'" *United States v. Bynum*, 604 F.3d 161, 167 (4th Cir. 2010) (alterations in original) (citations omitted).

The Court's inquiry into the reliability of an expert's testimony is "flexible," and focuses on "the principles and methodology employed by the expert." *Daubert*, 509 U.S. at 594-95. *Holesapple v. Barrett*, 5 F. App'x 177, 179 (4th Cir. 2001). In determining whether proffered testimony is sufficiently reliable, "the court has broad latitude to consider whatever factors bearing on validity the court finds to be useful; the particular factors will depend on the unique circumstances of the expert testimony involved." *Id.* Neither *Daubert* nor the Federal Rules of Evidence obligate a trial court "to admit opinion evidence that is [based merely on] the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Rather, "[r]eliability is to be determined by the 'principles and methodology' employed by the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 179 (4th Cir. 2001). Indeed, "[t]he Court must exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance to the jury." *Goyal v. Thermage, Inc.*, 2011 WL 691185, at *3 n.8 (D. Md. Feb. 18, 2011) (quoting *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004)).

### b.  Discussion

### i.  Mr. Clauser's Opinion

Mr. Clauser authored three reports regarding CSXT's liability for Mr. Montgomery's injuries – dated June 22, 2015 ("first report"), October 19, 2015 ("supplemental report"), and May 6, 2016 ("rebuttal report"), respectively.  Clauser's Reports, [ECF No. 121-2 at Ex. B].  In the first report, Mr. Clauser opined that, "CSX Transportation failed to provide a reasonably safe work place for their employees.  Once they became aware that the welds on the subject Jamco carts were defective and needed weld repairing, CSX should have removed all of the Jamco carts from service [permanently, or repaired them prior to continued use.]  Had CSX Transportation acted properly [to remove or repair the Jamco carts] … this incident would not have occurred and Mr. Montgomery would not have been injured."  *Id.*  Mr. Clauser took the same position in his subsequent reports.  *Id.*  Moreover, in his deposition and his rebuttal report, Mr. Clauser identified "near miss management theory" as the formal process underlying his opinion regarding CSXT's liability. *Id.*  Clauser Dep. 143.

### ii.  The Basis of Mr. Clauser's Opinion

Mr. Clauser testified at his deposition that he considers himself an expert in "industrial accident investigation, machine guarding safety," and "the near miss management concept of safety improvement."  Clauser Dep. 108:4-14.  Mr. Clauser also testified that he has been qualified as an expert in employer safety practices "maybe 50 times," but could not recall specifically being qualified as an expert in the safety practices of a railroad employer.  *Id.* at 109:8-110:8.  According to his curriculum vitae, Mr. Clauser is a certified professional engineer in Pennsylvania and New Jersey, with bachelor's and master's degrees in metallurgical engineering and materials sciences.  Clauser CV, [ECF No. 121-2 at Ex. F].  Mr. Clauser spent

15 years working in the electric and steel industries before becoming a consultant.  *Id.*  His areas

of responsibility have included material characterization, failure analysis, quality assurance,

industrial accident investigation, fracture mechanics, and forensic engineering.  *Id.*  Mr. Clauser

testified that he has never worked in the railroad industry or been specifically trained in railroad

industry practices.  Clauser Dep. 104:5-105:10.  Mr. Clauser testified that the railroad industry

was included in his training and coursework generally and that "[s]afety practices in a steel mill

are the same safety practices in a railroad facility, [with] subtle differences."  *Id.*

When asked to provide the basis of his expertise in near miss management, Mr. Clauser

cited his "engineering training, failure analysis and prevention, training you learn by your

mistakes," as well as his "experience on how you handle a situation like [the one at issue in this

case]."  *Id.* at 108:15-109:7, 132:11-133:3.  When asked to identify the specific rule, regulation,

literature, or authority upon which he rests his opinion that near miss management theory

imposes liability on CSXT, Mr. Clauser pointed to "almost any quality control book [including

one by an author named Juran]," "a lot of quality assurance programs [such as] ISO 2000," and

"[s]afety literature that this is an accepted part of accident prevention[,]" including "[a]rticles in

the American Society of Safety Engineers journal."  *Id.* at 133:4-24, 137:12-25.  In his rebuttal

report, Mr. Clauser specifically mentioned a representative "peer reviewed paper in the May

2013 issue of the <u>Journal of the American Society of Safety Engineers</u> by Mike Williamsen titled

*Near-Miss Reporting* [as] giv[ing] a good description and history of [the near miss management]

safety practice."  Clauser Reports, [ECF No. 121-2 at Ex. B].  Mr. Clauser testified at his

deposition that near miss management theory is taught in engineering schools, referenced in

standard engineering textbooks, recommended by peer-reviewed journal articles and professional

organization articles, and is a "recognized part of any good safety program" in the "safety

industry[.]"   Clauser Dep. 143:24-145:10.   When asked about his familiarity with railroad industry safety practices, Mr. Clauser stated:

> THE WITNESS:  *It's my knowledge* that railroads are supposed to provide a safe workplace for their employees.
>
> Q:  And what is the basis of that knowledge?
>
> A:  That goes across the board for industry, there are OSHA requirements. There are FELA requirements. *It's just general practice in the industry to provide a safe workplace for your people.*

*Id*. at 105:17-107:24 (emphasis added).   During the January 11, 2017 hearing on the instant motion ("the hearing"), Plaintiffs' counsel reiterated the above foundational bases for Mr. Clauser's opinion, and did not identify additional authority on which Mr. Clauser's opinion relies.

### iii.  The Objection

CSXT maintains that Mr. Clauser's testimony should be excluded under Federal Rule of Evidence 702 because, "[a]lthough [he] may be qualified as a metallurgist to offer an opinion as to why the welds in the subject cart failed, he is wholly unqualified to offer opinions on railroad industry safety practices." Def.'s Mot., [ECF No. 120-1 at 18-21] .   CSXT argues that Mr. Clauser's lack of "experience within the railroad industry," lack of forensic or consulting experience or training with railroad industry practices, and lack of familiarity "with any industry standards regarding servicing tool carts," makes him unqualified to supply expert testimony in this case.   *Id.* at 11-12, 20.   "His assertion that safety practices generally are part of his metallurgic engineering background is unavailing."   *Id.* at 20.   CSXT also claims that Mr. Clauser offers an insufficient basis for his liability opinion – erroneously relying on "general,

'across the board,' safety documents as the basis for what is required of a railroad in order to have a reasonably safe place to work[,]" rather than on highly federally regulated railroad industry standards, rules, regulations, or publications.  *Id.* at 13, 20.  CSXT reasons that Mr. Clauser's lack of familiarity with and failure to rely on railroad industry safety practices means that "he has not and cannot state that the near miss management theory of safety applies in the railroad industry."  Def.'s Reply, [ECF No. 124 at 6].  Consequently, CSXT urges this Court to reject Mr. Clauser's "impermissible," "'because I told you so'" theory of liability.  *Id.* (citing *Holesapple*, 5 F. App'x. at 180).

Plaintiffs make two points in opposition to CSXT's objection.  First, Plaintiffs reject CSXT's argument that Mr. Clauser improperly applies general safety standards to "a very specialized industry" as "erroneous because this case does not involve equipment unique to the railroad industry."  Pls.' Opp., [ECF No. 122 at 22].  Plaintiffs aver that "the tool carts [at issue] are generic carts used in numerous different industries, and the theory that Mr. Clauser will discuss applies to all industrial settings."  *Id.* at 24.  Plaintiffs further note that "[t]here is not a single regulation" within Title 49, C.F.R., Part 200 concerning tool carts.  *Id.*  Second, Plaintiffs argue that Rule 702 and Fourth Circuit case law liberally permits testimony by experts who do not have experience in the specific industry on which their opinion is based.  *Id.* at 22-24 (citations omitted).  Thus, Plaintiffs maintain that Mr. Clauser's "experience in the 'near miss management theory of safety,' which is based on his education and training, knowledge and experience, will be helpful to the jury's understanding what CSXT could have, and should have, done to protect Mr. Montgomery from the risks caused by tool carts with broken welds."  *Id.* at 24.[3]

---

[3] At the hearing, Plaintiffs' counsel narrowed the grounds for Mr. Clauser's qualifications to his training and education in near miss management theory.

The cases cited by Plaintiffs in support of Mr. Clauser's qualification to render an opinion as to the railroad industry are factually distinguishable from the instant case. Those cases each involved proffered experts with some experience in the particular industries at issue, whereas Mr. Clauser has no experience or particularized knowledge in the railroad industry or the safety practices applicable to employers who are end-users of tools. *See Friendship Heights Associates v. Vlastimil Koubek, A.I.A.,* 785 F.2d 1154 (4th Cir. 1986) (architect and structural engineer qualified to provide expert testimony regarding standard of care owed by an architect drafting specifications for the repainting of a building); *Garrett v. Desa Industries, Inc.*, 705 F.2d 721 (1983) (mechanical engineer experienced with components of stud drivers qualified to provide expert testimony regarding negligent manufacturing of stud drivers); *Banker Steel Co., LLC v. Hercules Bolt Co., Inc.*, No. 10-0005, 2011 WL 1743175 (W.D. Va. May 6, 2011) (engineer experienced with application of steel industry standards qualified to provide expert testimony regarding application of said standards to facts of the case); *KBS Preowned Vehicles, LLC v. United Financial Casualty Co.*, No. 13-138, 2014 WL 4388294 (N.D. W.Va. Sept. 5, 2014) (former truck driver, truck fleet manager, commercial auto insurance underwriter, and consultant qualified to provide expert testimony regarding cause of damage to a semi-truck). Mr. Clauser's experience in quality control for manufacturers is not helpful in establishing an employer's duties in this case.

Moreover, CSXT also challenges the insufficient basis for Mr. Clauser's opinion, which these cases do not address. *Id.* While Plaintiffs correctly argue that Mr. Clauser is not unqualified to deliver an expert opinion on tool carts simply because he has never worked in the railroad industry, this Court does not find that Mr. Clauser's opinion "is the product of reliable principles and methods." Fed. R. Evid. 702(c). CSXT conceded at the hearing, and the Court

agrees, that near miss management is a real theory taught in schools and discussed by safety engineers in safety industry publications.  However, Plaintiffs have not established an adequate basis for Mr. Clauser's opinion that a railroad employer must adopt a near miss management safety standard in order to ensure a reasonably safe workplace for its employees.  Mr. Clauser does not base his opinion on any government or industrywide standard incorporating near miss management theory into any acceptable safety program.

Moreover, even assuming arguendo that use of near miss management theory was required, Mr. Clauser has established no basis justifying his application of that theory to the facts of this case.  According to Mr. Clauser's own testimony, mere visual inspection of these tool carts would not have revealed the internal cracks causing Mr. Montgomery's injury.  Clauser Dep. 127:11-128:15, 129:3-9, 131:1-132:5.  Mr. Clauser therefore suggests that near miss management theory would require a more comprehensive (and presumably more expensive) analysis of all of CSXT's tool carts, potentially including a dye penetrant inspection, magnetic particle inspection, or a "proof test" to assess the sufficiency of their load bearing capacities.  *Id.* at 92:5-93:4, 135:7-23.  Again, he cites no basis for that opinion other than his own say so.  The railroad does not have to be a 100% insurer of its employees' safety.  *See, e.g.*, *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 248 (4th Cir. 1994) ("An employer has a duty to provide his employees a safe place to work, but this duty cannot be absolute. … [R]ailroads are not insurers of their employees.") (citations omitted).  The exceptionally high standard of safety that Mr. Clauser attempts to impose on CSXT, a mere end-user of tool carts manufactured by another company, lacks any foundation in government regulation, industry standard, or common practice.

The absence of a discernable, reliable, independent basis supporting his opinion renders Mr. Clauser's expert opinion evidence excludable.  *See Holesapple*, 5 F. App'x at 180 (requiring expert opinion evidence to be supported "by something more than the 'it is so because I say it is so' of the expert"); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (concluding that, under *Daubert*, an expert opinion based on "[his] qualifications, [his] conclusions, and [his] assurances of reliability … [is] not enough.")

## III.   SUMMARY JUDGMENT

### a.   Legal Standard

A motion for summary judgment shall be granted under Rule 56 of the Federal Rules of Civil Procedure if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990). When considering a motion for summary judgment, the court "must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmovant."  *McLean v. Ray*, 488 F. App'x 677, 682 (4th Cir. 2012) (citations and internal quotation marks omitted).  Summary judgment is precluded only when there are disputes over the facts that might affect the outcome of the proceedings under the applicable law.  Factual disputes that are not relevant or not necessary will not be considered in a summary judgment motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of showing an absence of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In response, the non-moving party must show that there is a genuine issue for trial.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  A court must

decide whether there is a genuine issue for trial, "not . . . weigh the evidence and determine the truth of the matter." *Id.* at 242-43.

### b. Federal Employers' Liability Act

Under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, "[e]very common carrier by railroad in the ... United States shall be liable in damages to any person suffering injury while he is employed by such carrier ... due to its negligence. 45 U.S.C. § 52. FELA "is founded on commonlaw concepts of negligence and injury." *Urie v. Thompson*, 337 U.S. 163, 182 (1949). "Railroads have a general duty under FELA to provide their employees with a reasonably safe workplace, including safe tools and equipment, to perform the assigned tasks." *Jordan v. S. Ry. Co.*, 970 F.2d 1350, 1353 (4th Cir. 1992). "This duty includes inspecting the workplace and taking reasonable precautions to protect employees from possible harm." *Brown,* 18 F.3d at 249. Moreover, a railroad's "duties are measured by what is reasonably foreseeable under like circumstances." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011).

### c. Discussion

"To withstand summary judgment, a FELA claimant must … show the existence of a triable issue of fact as to the traditional common-law elements of negligence, including duty, breach, and causation." *Tootle v. CSX Transp., Inc.*, 746 F. Supp. 2d 1333, 1337 (S.D. Ga. 2010). While "FELA imposes on a railroad carrier a duty to take reasonable precautions to inspect the workplace and protect its employees from possible danger, the plaintiff still carries the burden of proving some act of negligence by the carrier." *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330 (4th Cir. 1998) (internal citations omitted). To meet this burden, a FELA claimant must provide "evidence to show that an earlier inspection would have revealed or cured the problem with the [equipment at issue], or that the railroad had notice of the defect prior to the accident." *Id.*

Since the Court has excluded Mr. Clauser's liability opinion as to CSXT, Plaintiffs must rely on remaining evidence to establish that CSXT failed to provide a reasonably safe workplace. Plaintiffs claim that CSXT's duty to provide a reasonably safe workplace required it to inspect and, if necessary, repair all tool carts following Mr. Kennell's repairs to some tool carts, and that CSXT breached its duty when it failed to do so. *See* Pls.' Opp., [ECF No. 122 at 14, 27, 30]. At the hearing, Plaintiffs' counsel characterized CSXT's negligence as the failure to promulgate necessary safety rules and the failure of CSXT employees to report known issues to management. However, the only evidence Plaintiffs presented to prove that Mr. Kennell's prior repairs of tool carts triggered the need to repair all tool carts is Mr. Clauser's now-excluded opinion. Instead, Mr. Montgomery's deposition testimony confirms that CSXT had safety policies and procedures in place that obligated employees to inspect tool carts before each use. Montgomery Dep. 87:21-24. If a tool cart was found to be unsafe, CSXT policy required employees to tag the tool cart, remove it from service, and alert a supervisor. *Id.* at 153:5-19. Mr. Montgomery also testified that he followed CSXT's safety procedures on the day of the accident; he inspected the tool cart prior to using it and did not observe any unsafe conditions, such as cracks, on the cart. *Id.* at 87:8-89:10. For his part, Mr. Kennell testified that he repaired cracked welds on an unspecified number of tool carts during an unspecified period of time, and that he did not know whether the tool carts he repaired were manufactured by Jamco or not. Kennell Dep. 14:11-16:9, 34:17-21, 35:14-18. Mr. Kennell also stated that he did not discuss his repairs with anyone at CSXT and did not report any cracked tool carts as an unsafe condition. *Id.* at 18:9-11, 19:13-18, 33:9-17. Plaintiffs therefore appear to suggest that CSXT had a duty to promulgate more stringent rules to require someone like Mr. Kennell to report repairs to higher

management.  In the absence of Mr. Clauser's testimony, there is no factual basis to establish such a duty.

Moreover, "[r]easonable foreseeability of harm is an essential ingredient of FELA negligence." *Brown*, 18 F.3d at 249.  "'[The railroad's] duties are measured by what is reasonably foreseeable under like circumstances.' … Thus, '[i]f a person has no reasonable ground to anticipate that a particular condition … would or might result in a mishap and injury, then the party is not required to do anything to correct [the] condition.'" *CSX Transp.*, 564 U.S. at 703 (citations omitted).

In order for a jury to find CSXT liable on the basis of actual or constructive notice of the unsafe condition in the tool carts, Plaintiffs necessarily invite several layers of speculation, including: that the tool carts repaired by Mr. Kennell were Jamco tool carts or carts of the same design; that the broken welds on the tool carts repaired by Mr. Kennell had the same defect as the welds on the Jamco tool cart involved in the accident; that review of all tool carts at an earlier time would have revealed an unsafe condition in the Jamco tool cart involved in this case; and that CSXT management knew or should have known about the issue with the tool carts due to Mr. Kennell's prior repairs.  Simply put, the record evidence does not support any of these assumptions.

Instead, the record evidence shows that no PI-82 unsafe condition reports were filed in connection with tool carts prior to the accident,  *see, e.g.,* Cornachia Dep. 38:16-40:23, Shogren Dep. 15:18-20, and that Mr. Montgomery denied ever filing unsafe condition reports regarding tool carts.  Montgomery Dep. 60:6-13, 60:20-23.  Moreover, Mr. Kennell denied discussing his tool cart repairs with anyone at CSXT, Kennell Dep. 18:9-11, 19:13-18,  33:9-17, and CSXT supervisors Michael Cornachia and Curtis Shogren denied being aware of problems with any

tool carts in the Cumberland shop.  Cornachia Dep. 38:16-40:23; Shogren Dep. 15:18-20.  There was no evidence of any prior employee injuries involving tool carts.  *See, e.g.,* Kennell Dep. 39:23-40:4.

At the hearing, Plaintiffs' counsel argued that CSXT's duty to inspect, isolate, and repair its tool carts was triggered by the "pattern" of broken welds on tool carts.  However, the testimonial evidence on which Plaintiffs rely does not support this assertion. Pls.' Opp., [ECF No. 122 at 3-6].  As previously discussed, Mr. Kennell did not maintain repair records that would indicate the number or timing of tool cart repairs over the years, or the brand of the tool carts previously repaired.  As summarized by Plaintiffs, CSXT machinist Kenneth Kiser's deposition testimony reflects that "at some time before, not but right before Mr. Montgomery's accident, [Mr. Kiser] observed a cart similar to the subject Jamco cart that had all four of its legs broken as a result of broken welds.  It was located in the tool bay where it would not only have been visible to Mr. Kiser, but to every CSXT supervisor to walk through the area." Pls.' Opp., [ECF No. 122 at 5] (citing Kiser Dep. 10-11, 30-33).  Mr. Kiser stated that he did not know how the tool cart had broken and that he did not know if the cart he saw was a Jamco cart.  Kiser Dep. 11:9-19, 12:3-6.  Even if the Court assumes that the tool cart Mr. Kiser observed was a Jamco tool cart, one tool cart with broken welds from an unknown cause does not amount to a "pattern" giving CSXT prior notice of an unsafe condition in Jamco carts.  That single cart could have fallen off a truck or been hit by a locomotive.  Any assumption about the cause of its broken welds is sheer speculation.

Plaintiffs cannot carry their burden of proving foreseeability of harm based on the incidence of Mr. Montgomery's accident alone.  *See Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 ("FELA 'does not make the employer the insurer of the safety of his employees

while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur.'") (citation omitted).  Nor can Plaintiffs make their case on inferences based on guess work.  *See, e.g.*, *Deans*, 152 F.3d at 330 (affirming summary judgment where a FELA plaintiff's claim of negligence "rests on mere speculation and conjecture") (citing *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995) ("'[I]t is the province of the jury to resolve conflicting inferences from circumstantial evidence.  Permissible inference must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.'").  Plaintiffs have failed to present evidence that CSXT or its supervisors had actual or constructive notice that welds with internal cracks on Jamco tool carts posed a safety hazard to its employees who used the carts.  Consequently, the Court finds that Plaintiffs have failed to demonstrate reasonable foreseeability of harm.  Summary judgment is therefore warranted as to Plaintiffs' claims against CSXT.[4]

## IV.     Conclusion

For the reasons set forth above, Defendant CSXT's Motion to Exclude Expert Testimony and Motion for Summary Judgment is GRANTED.  A separate order will be filed herewith.

Dated:  January 19, 2017                                _____/s/_____

                                                        Stephanie A. Gallagher
                                                        United States Magistrate Judge

---

[4] Since the Court finds that CSXT is entitled to summary judgment due to the absence of evidence sufficient to establish negligence or foreseeability, causation need not and will not be addressed herein.

16